UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
TYSON LIAU, and
RICHARD TENG
*On behalf of themselves and on behalf of others similarly situated,*

                                    Plaintiffs,

            v.

WEEE! INC.
                                  Defendant.
------------------------------------------------------------------x

Case No. 23-cv-01177

**SECOND AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Tyson Liau and Richard Teng (*collectively referred as* "Plaintiffs") bring this Class Action Complaint against Defendant Weee! Inc. ("Defendant" or "Weee!"), on behalf of themselves and others similarly situated, and complains and alleges upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

**NATURE OF THE ACTION**

1. Plaintiffs bring this class action against Weee! For its failure to secure and safeguard its customers' personal data, including name, address, email address, and phone number.

2. On February 6, 2023, a threat actor named "IntelBroker" began leaking the data of Weee!'s customers on the "Breached" hacking and data breach forum (the "Breach").

3. Reportedly, the Breach contained, for 1.1 million of Weee!'s customers who placed orders after July 12, 2021: first and last names, email addresses, phone numbers, device types (*i.e.*, iOS, PC, or Android), order notes, and other data used by Weee!.

4. Defendant's security failures enabled the hackers to steal personal and financial data from Defendant and put Class members' personal and financial information at serious and ongoing risk. The hackers continue to use the information they obtained as a result of Defendant's

inadequate security to exploit and injure Class members across the United States.

5. The Breach was caused and enabled by Defendant's knowing violation of its obligations to abide by best practices and industry standards in protecting customers' personal information. Defendant grossly failed to comply with security standards and allowed its customers' financial information to be compromised, all in an effort to save money by cutting corners on security measures that could have prevented or mitigated the Breach.

6. Defendant failed to uncover and disclose the extent of the Breach and notify its affected customers of the Breach in a timely manner. Defendant failed to take other reasonable steps to clearly and conspicuously inform its customers of the nature and extent of the Breach. Furthermore, by failing to provide adequate notice, Defendant prevented Class members from protecting themselves from the Breach.

7. Accordingly, Plaintiffs, on behalf of themselves and other members of the Class, asserts claims for breach of implied contract and seeks injunctive relief, declaratory relief, monetary damages, statutory damages, and all other relief as authorized in equity or by law.

## JURISDICTION & VENUE

8. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, Plaintiffs' claims and the claims of other members of the class exceed $5,000,000.00 exclusive of interest and costs, and there are numerous Class members who are citizens of States other than Defendant's State of citizenship.

9. This Court has personal jurisdiction over Defendant because Defendant is registered with the New York Secretary of State to conduct business in the State of New York, and does conduct substantial business in the State of New York, such that Defendant has significant continuous and pervasive contacts with the State of New York. Defendant also maintains numerous facilities and employees in the State of New York.

10. Venue is proper in this District pursuant to 28 U.S.C. §¨ 1301(a)(2), 1391(b)(2), and 1391(c)(2) as: a substantial part of the events and/or omissions giving rise to the claims emanated from activities within this District, and Defendant conducts substantial business in this District.

## PARTIES

### *PLAINTIFF TYSON LIAU*

11. Liau is a citizen of the State of New York and is domiciled in Queens County, New York. Liau registered with Weee! in about August 2022, and made purchases from Weee! during that time. As a result, Liau entered into an implied contract with Weee! for the adequate protection of his personal identifying information and had his personal identifying information exposed as a result of Defendant's inadequate security.

### *PLAINTIFF RICHARD TENG*

12. Teng is a citizen of the State of New York and is domiciled in Queens County, New York. Plaintiff Teng registered with Weee! in about October 18, 2021, and made purchases with the Weee! app for at least twice a month until after the data breach. As a result, Teng entered into an implied contract with Weee! for the adequate protection of his personal identifying information and had his personal identifying information exposed as a result of Defendant's inadequate security.

### *DEFENDANT WEEE! INC.*

13. Defendant is a Delaware business corporation with its principal place of business in California, doing business in 40 States (all but Alaska, Arizona, Colorado, Hawaii, Idaho, Montana, Nevada, New Mexico, Utah, and Wyoming) and the District of Columbia. Defendant is the largest e-grocer specializing in Chinese and Hispanic grocery items in the United States.

**FACTUAL BACKGROUND**

*THE BREACH*

14. Like many other online vendors, Weee! requires customers to disclose personal identifying information and processes customer credit and debit card payments.

15. Current reports estimate that approximately 1.1 million customers became victims of a data breach when their personal information was taken from Defendants' information systems through the use of malicious software.

16. The hackers who accessed this personal information have wasted no time in putting it to nefarious use. On February 6, 2023, a threat actor named "IntelBroker" began leaking the data of Weee!'s customers on the "Breached" hacking and data breach forum. On February 8, 2023, at 4:21 PM, the online publication "Bleeping Computer" published a notice of the Breach,[1] and the online data breach checking service "Have I Been Pwned" compiled a list of persons whose personal identifying information was disclosed in the Breach. Plaintiffs were among them.

17. Defendant's failure to comply with reasonable security standards provided Weee! with short-term and fleeting benefits in the form of saving on the costs of compliance, but at the expense and to the severe detriment of its own customers—including Plaintiffs and the Class members here—who have been subject to the Breach or have otherwise had their personal identifying information placed at serious and ongoing risk.

18. Weee! allowed widespread and systematic theft of its customers' personal identifying information. Defendant's actions did not come close to meeting the standards of commercially reasonable steps that should be taken to protect customers' personal identifying information.

---

[1] *See* https://www.bleepingcomputer.com/news/security/weee-grocery-service-confirms-data-breach-11-million-affected/ (last visited February 10, 2023)

### *SECURITY BREACHES LEAD TO IDENTITY THEFT*

19. The United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report") that identity thieves use personal identifying information ("PII") to open financial accounts, receive government benefits, and incur charges and credit in a person's name.[2] As the GAO Report states, this type of identity theft is the most harmful because it may take some time for the victim to become aware of the theft and can adversely impact the victim's credit rating. In addition, the GAO Report states that victims of identity theft will face "substantial costs and inconveniences repairing damage to their credit records . . . [and their] good name."

20. According to the Federal Trade Commission ("FTC"), identity theft wreaks havoc on consumers' finances, credit history, and reputation, and can take time, money, and patience to resolve. Identity thieves use stolen PII for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[3]

21. A person whose PII has been compromised may not see any signs of identity theft for *years*. According to the GAO Report:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

22. PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for a

---

[2] *See* http:///www.gao.gov/new.items/d07737.pdf.
[3] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 12 C.F.R. § 1022.3(h). The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official state or government issued driver's license or identification number, alien registration number, alien registration number, government passport number, employer or taxpayer identification number." *Id*. (g)

number of years.[4] As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen credit card numbers and other PII directly on various Internet websites, making the information publicly available, just as they have done here.

***THE MONETARY VALUE OF PRIVACY PROTECTION***

23. At an FTC public workshop in 2001, then-Commissioner Orson Swindle described the value of a consumer's personal information as follows:

> The use of third party information from public records, information aggregators and even competitors for marketing has become a major facilitator of our retail economy. Even [Federal Reserve] Chairman [Alan] Greenspan suggested here some time ago that it's something on the order of the life blood, the free flow of information.

24. Though Commissioner Swindle's remarks are more than two decades old, they are even more relevant today, as consumers' personal data functions as a "new form of currency" that supports a $26 billion per year online advertising industry in the United States.[5]

25. The FTC has also recognized that consumer data is a new—and valuable—form of currency. In an FTC roundtable presentation, another former Commissioner, Pamela Jones Harbour, underscored this point by observing:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis—and profit.[6]

26. Recognizing the high value that consumers place on their PII, many companies now

---

[4] Companies, in fact, also recognize PII as an extremely valuable commodity akin to a form of personal property. For example, Symantec Corporation's Norton brand has created a software application that values a person's identity on the black market. Risk Assessment Tool, Norton 2010, www.everyclickmatters.com/victim/assessment-tool.html. *See also* T. Soma, ET AL, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3–4 (2009).

[5] *See Web's Hot New Commodity: Privacy*, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited February 10, 2023) ("Web's Hot New Commodity: Privacy").

[6] *Statement of FTC Commissioner Pamela Jones Harbour* (Remarks Before FTC Exploring Privacy Roundtable), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited February 10, 2023).

offer consumers an opportunity to sell this information to advertisers and other third parties. The idea is to give consumers more power and control over the type of information that they share—and who ultimately receives that information. And, by making the transaction transparent, consumers will make a profit from the surrender of their PII.[7] This business has created a new market for the sale and purchase of this valuable data.[8]

27. Consumers place a high value not only on their PII, but also on the *privacy* of that data. Researchers have already begun to shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when [retailers'] privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."

28. When consumers were surveyed as to how much they valued their personal data in terms of its protection against improper access and unauthorized secondary use—two concerns at issue here—they valued the restriction of improper access to their data at between $11.33 and $16.58 per website, and prohibiting secondary use to between $7.98 and $11.68 per website.[9]

29. Given these facts, any company that transacts business with a consumer and then compromises the privacy of that consumer's PII, like Weee!, has deprived that consumer of the full monetary value of the consumer's transaction with the company.

## DAMAGES SUSTAINED BY PLAINTIFFS AND THE CLASS

30. A portion of the services purchased from Weee! by Plaintiffs and the Class necessarily included compliance with industry-standard measures with respect to the collection

---

[7] *You Want My Personal Data? Reward Me for It*, http://www.nytimes.com/2010/07/18/business/18unboxed.html (last visited February 10, 2023).
[8] *See supra*, n.4.
[9] Hann et al., *The Value of Online Information Privacy: An Empirical Investigation* (Mar. 2003) at 2, *available at* http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (last visited February 10, 2023); Tsai, Cranor, Acquisti, and Egelman, *The Effect of Online Privacy Information on Purchasing Behavior*, 22(2) Information Systems Research 254, 254 (June 2011).

and safeguarding of PII, including their credit and debit card information. Because Plaintiffs and the Class were denied privacy protections that they paid for and were entitled to receive, Plaintiffs and the Class incurred actual monetary damages in that they overpaid for the services purchased from Weee!.

31. Weee! furnished notice of the Breach to Plaintiff Richard Teng on February 9, 2023. Specifically, Weee! represented to customers that "a third party gained unauthorized access to information on orders place between July 12, 2021 and July 12, 2022," that "the exposed information includes name, address, email address, phone number, order number, order amount and order comments," that "no payment data (credit/debit card detail) was exposed" and that Richard Teng's account password was not compromised, but that he should nevertheless change his account password. Weee! further represented that it had "identified and resolved [the] issue and [would] continue improving security protocols to safeguard your data." Weee! did not represent that the compromised data was limited to name, address, email address, phone number, order number, order amount and order comments.

32. Further, as explained above, fraudulent use of PII might not be apparent for years, and consumers must expend considerable time and effort taking precautions to secure their PII for years to come.

33. In any event, as security blogger Brian Krebs notes, "credit monitoring services will do nothing to protect consumers from fraud on existing financial accounts – such as credit and debit cards – and they're not great at stopping new account fraud committed in your name."

34. As a result of these activities, Plaintiffs and the Class suffered additional damages arising from the costs associated with identity theft and the increased risk of identity theft caused by Defendant's wrongful conduct.

35. In particular, Plaintiff Richard Teng purchased a $24.99/month subscription to the Experian ID Protection Program.

36. Further, the leak of Plaintiff Richard Teng's personal identifying information has led to his receiving numerous "spam" telephone calls and text messages, including a barrage of twelve spam phone calls within two minutes (3:41–3:42 PM) on May 27, 2023, three "fraud risk" telephone calls at about 6:05 PM on each of May 1, May 3, and May 9, 2023, and a spam text message on April 11, 2023 fraudulently advertising the services of a so-called pathologist "Prof Shen Yulei" in Michigan. Plaintiff Richard Teng received numerous other spam text messages that he deleted.

37. Plaintiffs and the Class suffered additional damages based on the opportunity cost and value of time that Plaintiffs and the Class have been forced to expend to monitor their financial and bank accounts as a result of the Security Breach. Such damages also include the cost of obtaining replacement credit and debit cards.

## CLASS ACTION ALLEGATIONS

38. Plaintiffs bring Count I, as set forth below, on behalf of themselves and as a class action, pursuant to the provisions of Rule 23 of the Federal Rule of Civil Procedure on behalf of a class defined as:

> All persons residing in the United States who registered an account with Weee! e-grocery service at any time from June 21, 2021 through February 6, 2023 (the "National Class").

Excluded from the National Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

39. Plaintiffs bring Count II, as set forth below, on behalf of themselves and as a class action, pursuant to the provisions of Rule 23 of the Federal Rule of Civil Procedure on behalf of a class defined as:

> All persons residing in one of the Consumer Fraud States[10] who registered an account with Weee! e-grocery service at any time from June 21, 2021 through February 6, 2023 (the "Consumer Fraud Multistate Class").

Excluded from the Consumer Fraud Multistate Class, are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

40. In the alternative to Count II, Plaintiffs bring Count III, as set forth below, on behalf of themselves and as a class action, pursuant to the provisions of Rule 23 of the Federal Rule of Civil Procedure on behalf of the following state sub-class, defined as:

> All persons residing in the State of New York who registered an account with Weee! e-grocery service at any time from June 21, 2021 through February 6, 2023 (the "New York State Class").

Excluded from the New York State Class, are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers

---

[10] The States that have similar consumer fraud laws based on the facts of this case are: Arkansas (Ark. Code § 4-88-101, *et seq.*); California (Cal. Bus. & Prof. Code §17200, *et seq.* and Cal. Civil Code § 1750, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, *et seq.*); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Illinois (815 ICLS § 505/1, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.* ); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59-1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349,*et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Pennsylvania (73 P.S. § 201-1, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia (W. Va. Code § 46A-6- 101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*).

41. The National Class, Consumer Fraud Multistate Class, and New York State Class are collectively referred to as the "Class," unless specifically indicated otherwise.

42. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

### *NUMEROSITY*

43. The members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, Class members number in the thousands to millions. The precise number of Class members and their addresses are presently unknown to Plaintiffs, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

### *COMMONALITY AND PREDOMINANCE*

44. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

   a. Whether Weee! failed to use reasonable care and commercially reasonable methods to secure and safeguard its customers' sensitive personal information;

   b. Whether Weee! properly implemented its purported security measures to protect customer information from unauthorized capture, dissemination, and misuse;

   c. Whether Defendant's conduct violates the New York and other asserted Consumer Fraud Acts;

   d. Whether Defendant's conduct constitutes breach of an implied contract; and

   e. Whether Plaintiffs and the other members of the Class are entitled to damages, injunctive relief, or other equitable relief.

45. Weee! engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

## *TYPICALITY*

46. Plaintiffs' claims are typical of the claims of the other Class members because, among other things, all Class members were comparably injured through Defendant's uniform misconduct described above and were thus all subject to the Breach alleged herein. Further, there are no defenses available to Weee! that are unique to Plaintiffs.

## *ADEQUACY OF REPRESENTATION*

47. Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members they seek to represent, they have retained counsel competent and experienced in complex class action litigation, and they will prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

## *INSUFFICIENCY OF SEPARATE ACTIONS*

48. Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue hardship and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible

standards of conduct for Weee!. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

*DECLARATORY AND INJUNCTIVE RELIEF*

49. Weee! has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Class as a whole.

*SUPERORITY*

50. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Weee!, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS ALLEGED

### COUNT I
**Breach of Implied Contract**
**(on Behalf of the National Class)**

51. Plaintiffs incorporate by reference paragraphs 1–50 as if fully set forth herein.

52. Customers who intended to make purchases at Defendant's e-grocer with debit or credit cards were required to provide their names, emails, credit or debit card information, and other information for payment and payment verification.

53. In providing such data, Plaintiffs and the other members of the Class entered into an implied contract with Weee! whereby Weee! became obligated to reasonably safeguard Plaintiffs' and the other Class members' sensitive, non-public information.

54. Plaintiffs and the Class members would not have entrusted their private and confidential financial and personal information to Defendant in the absence of such an implied contract.

55. Weee! breached the implied contract with Plaintiffs and the other members of the Class by failing to take reasonable measures to safeguard their data.

56. Plaintiffs and the other Class members suffered and will continue to suffer damages including but not limited to loss of their information and loss of money and costs incurred as a result of increased risk of identity theft, all of which have ascertainable value to be proven at trial.

### COUNT II
**Violation of the New York Deceptive Acts and Practices Law
(and Substantially Similar Laws of the Consumer Fraud States)
(on Behalf of the Consumer Fraud Multistate Class)**

57. Plaintiffs incorporate by reference paragraphs 1–50 as if fully set forth herein.

58. Plaintiffs and the other members of the Class were deceived by Defendant's failure to properly implement adequate, commercially reasonable security measures to protect their private information while ordering groceries from Weee!.

59. Weee! intended for Plaintiffs and the other members of the Class to rely on Weee! to protect the information furnished to it in connection with their debit and credit card transactions

in such manner that the transactions would be protected, secure, and not susceptible to access from unauthorized third parties.

60. Weee! instead handled Plaintiffs' and the other Class members' personal information in such manner that it was compromised.

61. Weee! failed to follow industry best practices concerning data theft or was negligent in preventing such data theft from occurring.

62. It was foreseeable that Defendant's willful indifference or negligent course of conduct in handling its customers' personal information would put that information at risk of compromise by data thieves.

63. Weee! benefited from mishandling its customers' personal information because, by not taking preventative measures that would have prevented the data from being compromised, Weee! saved on the cost of those security measures.

64. Defendant's fraudulent and deceptive acts and omissions were intended to induce Plaintiffs and the other Class members' reliance on Defendant's deception that their financial information was secure and protected when using debit and credit cards to order from Weee!.

65. Weee! violated N.Y. Gen. Bus. L. § 349 by failing to properly implement adequate, commercially reasonable security measures to protect Plaintiffs' and the other Class members' private financial information, by failing to warn customers that their information was at risk, and by failing to discover and immediately notify affected customers of the nature and extent of the Breach.

66. Defendant's acts or practice of failing to employ reasonable and appropriate security measures to protect consumers' personal information constitute violations of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

67. Defendant's conduct constitutes unfair acts or practices as defined in that statute because Weee! caused substantial injury to Class members that is not offset by countervailing benefits to consumers or competition and is not reasonably avoidable by consumers.

68. Plaintiffs and the other members have suffered injury in fact and actual damages including lost money and property as a result of Defendant's violations of N.Y. Gen. Bus. L. § 349.

69. Plaintiffs' and the other Class members' injuries were proximately caused by Defendant's fraudulent and deceptive behavior, which was conducted with reckless indifference toward the rights of others, such that an award of punitive damages is appropriate.

70. By this conduct, Weee! violated the substantive consumer protection and unfair deceptive trade practices acts or statutes of the Consumer Fraud States, whose laws do not materially differ from that of New York, or conflict with each other for purposes of this action.

### COUNT III
**Violation of the New York Deceptive Acts and Practices Law**
**(In the Alternative to Count II and on Behalf of the New York State Class)**

71. Plaintiffs incorporate by reference paragraphs 1–50 as if fully set forth herein.

72. Plaintiffs and the other members of the Class were deceived by Defendant's failure to properly implement adequate, commercially reasonable security measures to protect their private information while ordering groceries from Weee!.

73. Weee! intended for Plaintiffs and the other members of the Class to rely on Weee! to protect the information furnished to it in connection with their debit and credit card transactions in such manner that the transactions would be protected, secure, and not susceptible to access from unauthorized third parties.

74. Weee! instead handled Plaintiffs' and the other Class members' personal information in such manner that it was compromised

75. Weee! failed to follow industry best practices concerning data theft or was negligent in preventing such data theft from occurring.

76. It was foreseeable that Defendant's willful indifference or negligent course of conduct in handling its customers' personal information would put that information at risk of compromise by data thieves.

77. Weee! benefited from mishandling its customers' personal information because, by not taking preventative measures that would have prevented the data from being compromised, Weee! saved on the cost of those security measures.

78. Defendant's fraudulent and deceptive acts and omissions were intended to induce Plaintiffs' and the other Class members' reliance on Defendant's deception that their financial information was secure and protected when using debit and credit cards to order from Weee!.

79. Weee! violated N.Y. Gen. Bus. L. § 349 by failing to properly implement adequate, commercially reasonable security measures to protect Plaintiffs' and the other Class members' private financial information, by failing to warn customers that their information was at risk, and by failing to discover and immediately notify affected customers of the nature and extent of the Breach.

80. Defendant's acts or practice of failing to employ reasonable and appropriate security measures to protect consumers' personal information constitute violations of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

81. Defendant's conduct constitutes unfair acts or practices as defined in that statute because Weee! caused substantial injury to Class members that is not offset by countervailing benefits to consumers or competition and is not reasonably avoidable by consumers.

82.     Plaintiffs and the other members have suffered injury in fact and actual damages including lost money and property as a result of Defendant's violations of N.Y. Gen. Bus. L. § 349.

83.     Plaintiffs' and the other Class members' injuries were proximately caused by Defendant's fraudulent and deceptive behavior, which was conducted with reckless indifference toward the rights of others, such that an award of punitive damages is appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually on behalf of themselves and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in his favor and against Weee!, as follows:

A.     Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel for the Class;

B.     Ordering Weee! to pay actual damages to Plaintiffs and the other members of the Class;

C.     Ordering Weee! to pay for not less than three years of credit card monitoring services for Plaintiffs and the other members of the Class;

D.     Ordering Weee! to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Class;

E.     Ordering Weee! to pay statutory damages, as provided by the New York Deceptive Acts and Practices Law and other applicable State Consumer Fraud Acts, to Plaintiffs and the other members of the Class;

F.	Ordering Weee! to disseminate individualized notice of the Breach to all Class members;

G.	Ordering Weee! to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Class;

H.	Ordering Weee! to pay both pre- and post-judgment interest on any amounts awarded; and

I.	Ordering such other and further relief as may be just and proper.

Dated: Flushing, NY
       May 31, 2023

                                                Respectfully submitted,

                                                TROY LAW, PLLC
                                                *Attorneys for Plaintiffs*

                                                 */s/ John Troy*
                                                John Troy
                                                Tiffany Troy
                                                Aaron B. Schweitzer
                                                41-25 Kissena Boulevard
                                                Suite 110
                                                Flushing, NY 11355
                                                (718) 762-1324
                                                troylaw@troypllc.com